## Willard Batman, et. al., v. Charles H. Cook.

1. CONSPIRACY—*when established.* Where it appears that the defendants in a cause pursued by their acts the same object, by the same means, one performing one part, and another, another part of the same, so as to complete it, with a view to the attainment of such object, the jury is justified in the conclusion that they were engaged in a conspiracy to effect that object.

2. GAMBLING—*extent of plaintiff's right to recover where declaration charges a conspiracy.* Where, in an action brought to recover gambling losses, the declaration charges conspiracy, the plaintiff is entitled to recover from all of the defendants (the proof being sufficient) the full amount lost, irrespective of who was the winner thereof.

3. GAMBLING—*extent of plaintiff's right of recovery where the declaration relies upon the statute and is in trover.* In such a case the plaintiff is likewise entitled to recover his losses, but in order to do so it is essential that the judgment be against the winner thereof.

4. EXEMPLARY DAMAGES—*when properly to be assessed.* Exemplary damages are properly assessed where the declaration alleges and the proof establishes a wilful fraud perpetrated upon the plaintiff as the result of a conspiracy.

Action of trover. Error to the Circuit Court of Moultrie County; the Hon. WILLIAM G. COCHRAN, Judge, presiding. Heard in this court at the November term, 1904. Affirmed upon remittitur. Opinion filed April 20, 1905. Remittitur filed and judgment affirmed May 10, 1905.

R. M. PEADRO, for plaintiffs in error.

E. J. MILLER, for defendant in error.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action by defendant in error against plaintiffs in error to recover money alleged to have been lost by him to them, at gambling. The plaintiff recovered judgment in the Circuit Court for $800, to reverse which the defendants prosecute this writ of error.

The first and third counts of the declaration are in case, and charge that the defendants, knowing that plaintiff had a large amount of money on his person, agreed among themselves, to furnish to him large quantities of intoxicating liquors for the purpose of getting him intoxicated and

keeping him so, and while so intoxicated, to engage with him at a pretended game of cards and thus take his money from him; that pursuant to such conspiracy, defendant Batman being a saloonkeeper, furnished the liquor; that the other defendants administered the same to plaintiff and intoxicated him; and that while plaintiff was so intoxicated, the defendants tortiously took from plaintiff without any consideration whatever, the sum of $355, and kept the same, to damage of plaintiff of $1,500, etc. The second count is in trover and is based upon the Gaming Statute, section 132, chapter 38, R. S. To the declaration the plea of the general issue was interposed.

Plaintiffs in error contend that the evidence is insufficient to support the verdict, that the court erred in its rulings upon the instructions, and that the damages are excessive.

The facts involved, briefly stated, are as follows:

About 8 o'clock on Saturday evening, January 17, 1903, the plaintiff, who was a farmer living in the vicinity, in company with one Swisher, went to the saloon of defendant Harris, in the city of Sullivan. He had been drinking intoxicants and had on his person at the time about $355. Harris suggested to plaintiff that they go to a saloon kept by defendants Baker and Batman and play a game called "poker." They then went to a small room adjoining the Baker and Batman saloon, where they met defendants Batman and Farney, and at about ten o'clock were joined by defendant Baker; after which Farney, Batman, Baker, Swisher, Randol and plaintiff began to play a game of poker which continued until about four o'clock of the following morning. Farney acted as "banker" for the game, issuing the chips and taking in the money. Baker, Batman and Swisher besides playing took turns in passing whisky to the other players. Harris did not participate in the game but was present and aided in serving the liquor. Plaintiff testifies that the whisky was passed "like water at a school house in the summer time," and that he took eight or ten drinks. There is no evidence showing that

any charge was made for the liquor, or that any one but plaintiff became intoxicated. At the close of the game plaintiff had lost all the money he had. The evidence further shows that plaintiff was the only one of the party who produced any money during the entire game. The witness Randol, who was called by plaintiff, testifies that when the game broke up along about four or five o'clock in the morning, Farney remarked: "We'll give the suckers $20 or $25;" that Baker then handed Harris, Swisher and witness $20 each, and told them to take plaintiff away so that they could "divide up;" that the understanding was that they would divide even; that either Farney, Baker or Batman told witness that if he was fined for gambling they would pay his fine; that Batman stated they had won $260 from plaintiff which he was going to divide.

But two of the defendants went upon the witness stand in the case: Baker, who testifies that on the evening in question he left the saloon at closing time and did not return until 3:30 in the morning, when he ordered the parties playing poker to leave; and Harris, who merely denied that he suggested to plaintiff before going to the saloon that they play poker. Neither denied that an agreement existed as charged in the declaration, or the furnishing of liquor to plaintiff, or the division of the money as testified by Randol.

We are of opinion that the foregoing evidence, which was not seriously controverted, fully sustains the first and third counts of the declaration. That the facts and circumstances proved warranted the jury in finding that the common purpose of the defendants was to induce plaintiff to drink to intoxication, and while he remained in that condition, to obtain his money under the pretext of a game of poker.

In Greenleaf on Evidence (vol. 3, section 92), it is said: "The evidence in proof of a conspiracy will generally, from the nature of the case, be circumstantial. Though the common design is the essence of the charge, it is not necessary to prove that the defendants came together and actually agreed to terms, to have that design, and to pur-

sue it by common means. If it be proved that the defendants pursued by their acts, the same object, often by the same means, one performing one part, and another, another part of the same so as to complete it, with a view of the attainment of the same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object. Nor is it necessary to prove that the conspiracy originated with the defendants, or that they met during the process of its concoction, for every person entering into a conspiracy or common design already formed, is deemed, in law, a party to all acts done by any of the other parties, before or afterwards, in furtherance of the common design."

If it was proved that the defendants in the case at bar, pursued by their acts, the same object, by the same means, one performing one part, and another, another part of the same, so as to complete it, with a view to the attainment of such object, the jury was justified in the conclusion that they were engaged in a conspiracy to effect that object. Ochs v. People, 124 Ill. 399.

As we have said, there were two counts in the declaration based upon the charge of conspiracy, and one in trover based upon the statute. In assessing the damages in the event of a recovery upon the former, what each defendant may have won or lost in the game was immaterial. Plaintiff was entitled to recover the full amount taken from him by the defendants through, by means of, or as the result of the conspiracy. The gist of the action upon which these counts are predicated is the formation and accomplishment of an unlawful conspiracy to deprive plaintiff of his money by unlawful means. The gist of the trover count is the violation of the statute making gaming unlawful and providing that any loser at gaming may recover from the winner the amount so lost. If a conspiracy existed and was consummated as claimed, which we think sufficiently appears, it was not necessary, as is contended by counsel, to show that each and every of the defendants actually won any money from plaintiff, nor was it necessary to establish the respective relations of the defendants. If re-

covery had been sought under the trover count alone, or, as in Zellers v. White, 208 Ill. 518, cited by counsel, in assumpsit, it would have been necessary as contended by appellants to have established that appellee lost, and some defendant or defendants won, some definite, fixed sum or sums. In the case at bar, the defendants having cooperated in the unlawful act, are jointly and severally liable for the resultant injury and for all damages sustained. The damages cannot be severally assessed. There can be but one assessment between the several wrong-doers. It sufficiently appears that appellee, as the result of the conspiracy and its consummation, was deprived of the sum of $355, and that he was actually damaged to that extent. It is insisted that the damages awarded are excessive in any event and unwarranted by the evidence.

The instructions of the court upon the measure of damages are inconsistent and misleading in that they, in stating the same, fail to distinguish between the several counts. By plaintiff's fourth instruction the jury were told, that in the event they found the defendants guilty under the trover count, the measure of damages would be the value of the money converted; and by the fifth, that under the conspiracy counts the damages were "not limited to the exact sum which defendants took from plaintiff." Defendants' first modified instruction tells the jury that before plaintiff can recover he must prove that he " lost his money in a game of cards, and must show the amount alleged to have been lost, and to whom the sum was lost, and that the verdict should be only for the amount so proven to have been lost against the defendant or defendants." By defendants' second modified instruction they are told that before plaintiff can recover in the case, he must prove that the defendants, and each of them, conspired together to and did fraudulently cheat plaintiff out of his money at a game of cards, and that in the event that they found them guilty " the verdict should be only for the amount of money so obtained." The verdict returned by the jury largely exceeds the amount claimed by plaintiff to have been taken from him by the defendants.

It is contended by appellee that the excess of the verdict over the actual damages proved represents exemplary damages under the conspiracy counts. We think it may fairly be assumed that the damages other than actual, were assessed under the authority of plaintiff's fifth instruction. The jury were not, however, instructed upon the question of exemplary damages; they were not told when the same were allowable nor was the term "exemplary" defined or explained. The acts charged in the conspiracy counts were essentially fraudulent and wilful. Exemplary damages were therefore proper to be assessed thereunder, not as compensation to the plaintiff, but by way of punishment to the wrong-doers. The question as to the amount of exemplary damages within reasonable limits, is one for the jury and their finding should not be disturbed, unless the verdict is so excessive as to justify the inference that they were actuated by passion or prejudice. To what extent the amount of the verdict was affected by the lack of full, consistent and accurate instructions as to the measure of damages, is entirely speculative. We are not satisfied that a judgment for the full amount awarded should, under the circumstances, be permitted to stand. The right of plaintiff to recover the full amount of money of which he was defrauded is, however, beyond question. If defendant in error shall, within thirty days after this opinion is filed, remit therefrom the sum of $445, the judgment will be affirmed for the balance. Otherwise the judgment will be reversed and the cause remanded. A number of other alleged errors are urged. We have considered those not covered by what has been already said, and find that they are not well assigned.

The abstract of the record filed by plaintiffs in error is not such as is required by the rules of this court. It is neither complete nor accurate. Defendant in error was in consequence compelled to supply an additional abstract, the costs of which will be taxed against plaintiffs in error.

*Affirmed upon remittitur.*

Remittitur filed and judgment affirmed May 10, 1905.