(No. 25428.—

THE CITY OF OTTAWA, Appellant, *vs.* ERNEST BROWN, Appellee.

*Opinion filed December 15, 1939.*

PALMER C. BYRNE, and ANDREW J. O'CONOR, for appellant.

ARTHUR H. SHAY, for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Ernest Brown was charged with violating an ordinance of the city of Ottawa which regulated and required a license for filling stations. He was found guilty by a justice of the peace, but on a trial *de novo* in the county court of

La Salle county a judgment of not guilty was rendered. The trial judge certified that the validity of a municipal ordinance is involved and that the public interest requires a direct appeal to this court. The city of Ottawa has perfected this appeal.

Section 65 of article 5 of the Cities and Villages act (Laws of 1872, p. 232; Ill. Rev. Stat. 1939, chap. 24, par. 65.64) has provided, since 1872, that cities and villages shall have power, "To regulate and prevent storage of gunpowder, tar, pitch, resin, coal oil, benzine, turpentine, hemp, cotton, nitroglycerine, petroleum, or any of the products thereof, and other combustible or explosive material," etc. We have recognized that gasoline is a product of petroleum and is subject to regulation under this section of the statute. (*Fligelman* v. *City of Chicago;* 348 Ill. 294.) On April 14, 1916, the city of Ottawa adopted an ordinance "regulating the storage and handling of crude petroleum, benzine, benzol, gasoline, naphtha, ether, and other like volatic combustibles or their compounds." By the terms of this ordinance it was made unlawful to keep within the city limits more than ten gallons of the above named compounds, except in a storage tank constructed and located in accordance with the specifications in the ordinance. Persons engaged in the storage of volatile combustibles in the quanties mentioned were required to maintain fire extinguishers, under the direction and supervision of the city fire marshal. Automobiles were permitted to carry not more than twenty gallons in leak-free and securely capped tanks, and tank wagons were permitted to operate within the fire limits of the city for the time necessary to transport and unload their contents, without being subject to the penalties provided by the ordinance.

On July 1, 1919, "An act to regulate the storage, transportation, sale and use of gasoline and volatile oils;" became effective. (Laws of 1919, p. 692; Ill. Rev. Stat. 1939, chap. 38, par. 351-3.) So far as material it provides:

470

"1. That it shall be unlawful for any person, firm, association or corporation to keep, store, transport, sell or use any crude petroleum, benzine, benzol, gasoline, naphtha, ether or other like volatile combustibles, or other compounds, in such manner or under such circumstances as will jeopardize life or property. 2. Except in cities or villages where regulatory ordinances upon the subject are in full force and effect the Department of Trade and Commerce shall have power to make and adopt reasonable rules and regulations governing the keeping, storage, transportation, sale or use of gasoline and volatile oils." In 1937, the Department of Insurance was given the powers formerly exercised by the Department of Trade and Commerce. Laws of 1937, p. 502.

On July 3, 1930, the city adopted the ordinance the validity of which is here questioned. It provides for the regulation and licensing of filling stations. After defining the term "filling station" it forbids any person, firm or corporation to manage, conduct, operate or carry on the business of a filling station without first having obtained a license therefor. Application for a license must be made with the city clerk and a fee of one dollar for each pump is exacted. Each filling station must be conducted and maintained in accordance with the provisions of the ordinances of the city. Each station shall be inspected at least twice each year by the chief of the fire department. Any person, firm or corporation desiring to locate, build, construct, operate, or maintain a filling station in any block where a majority of the houses abutting both sides of the street are used exclusively for residence purposes must first secure the written consent of a majority of the frontage abutting on such street on both sides within the block. Violations are punishable by a fine of not less than five nor more than two hundred dollars, and a separate offense is deemed committed on each day during which a violation occurs or continues. The defendant, here, was accused of erecting a filling station without obtaining the needed frontage consents.

It is well established that the legislature may withdraw power delegated to a municipality, but the narrow question presented here is whether the legislature has done so, or whether the city of Ottawa is within the exception contained in the act of 1919 in favor of cities or villages which had in full force and effect regulatory ordinances for "keeping, storage, transportation, sale or use of gasoline and volatile oils." If it is within the exception the city had power to adopt its ordinance of July 3, 1930, regulating and licensing filling stations. If not, the ordinance is invalid. The city contends that the ordinance of 1916 which regulated the storage and handling of gasoline was a sufficient regulatory ordinance to retain the power originally conferred by section 65 of article 5 of the Cities and Villages act, and preserved to it by the act of 1919. Appellee, Brown, contends that the 1916 ordinance simply provided for the storage of gasoline and did not undertake to regulate the place where gasoline filling stations might be located, nor provide for frontage consents for the erection thereof, nor to require them to be licensed. He, therefore, says that the act of 1919 deprived the city of power to adopt the regulatory ordinance of 1930.

Municipal corporations are creatures of the legislature. They possess no inherent powers but derive all their powers from the enactments of the General Assembly. Such statutes are strictly construed, and any fair, reasonable doubt as to the grant or extension of an asserted power is resolved against the city or village. (*People* v. *Wolper*, 350 Ill. 461, 465.) But once it is determined that there is competent authority for the passage of a statute or an ordinance, the presumption is always in favor of its validity. (*Harmon* v. *City of Chicago*, 140 Ill. 374, 396.) In *Kizer* v. *City of Mattoon*, 332 Ill. 545, the city had adopted no ordinance regulating the storage of gasoline prior to the passage of the 1919 act above referred to, and we held invalid a subsequent ordinance which purported to regulate the keeping,

storage, sale, handling and transportation of gasoline; but in *Fligelman* v. *City of Chicago, supra,* the city had in force regulatory ordinances dealing with storage of gasoline when the 1919 act was passed. We held that because the city had entered the field of regulation of storage of gasoline as it was authorized to do, this power was preserved to it by the exception contained in the 1919 act. We also held that it had the implied power to license gasoline filling stations.

It is worthy of note that under section 65 of article 5 of the Cities and Villages act, the only express power given cities and villages was "to regulate and prevent storage" of the combustibles there enumerated. The 1919 act governs the keeping, storing, transporting, selling or use of gasoline and other named combustibles, "except in cities or villages where regulatory ordinances on the subject are in full force and effect." If the legislature, in the Cities and Villages act, had not used the word "storage" in a broad sense so as to include selling, storing, transportation and location of depots or containers for the combustible chattels mentioned, no power to regulate anything except the actual storage, as distinguished from transportation, handling and selling, would have existed and, therefore, none could have been preserved by the exception in the 1919 act. The 1916 ordinance regulated the storage of gasoline and was in full force and effect when the 1919 act became effective. The city had sufficiently exercised the power to enable it either to amend the ordinance or to adopt a broader one. This being true, the ordinance of July 3, 1930, was authorized and was valid. This conclusion is supported by our holding in the case of *Fligelman* v. *City of Chicago, supra.*

We cannot sustain the contention of appellee that the 1916 ordinance was repealed by an ordinance adopted on October 30, 1917. Although, in form, an ordinance, it simply granted permission to the Standard Oil Company of Indiana to erect storage tanks on a certain described

piece of property. Section 9 of the ordinance of 1916 required such permission to be obtained. The later ordinance amounted only to a permit. 2 McQuillan on Municipal Corporations, (2d ed.) p. 799.

The county court of LaSalle county erred in holding the 1930 ordinance invalid. Although the facts were stipulated nothing was said as to the penalty. It is the duty of the trial court, if, on a new trial it finds the appellee guilty, to assess his fine within the limits fixed by the ordinance.

The judgment of the county court of LaSalle county is reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*