99 N.J. Super. 58 (1968)
238 A.2d 501
LAWRENCE HOURUN, PLAINTIFF-RESPONDENT,
v.
TOWNSHIP COMMITTEE OF UNION, ZONING BOARD OF UNION AND LOUIS J. GIACONA, BUILDING INSPECTOR, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 1967.
Decided January 29, 1968.
*60 Before Judges GAULKIN, LEWIS and KOLOVSKY.
Mr. Donald G. Kein argued the cause for appellants (Messrs. Kein, Scotch, Pollatschek, Iacopino & Kein, attorneys).
Mr. Michael Jay Mehr argued the cause for respondent.
The opinion of the court was delivered by LEWIS, J.A.D.
Plaintiff, a resident of the Township of Union, instituted a declaratory judgment proceeding to invalidate a section of the local zoning ordinance, to enjoin the enforcement thereof and to direct the municipal building inspector to issue a permit for the maintenance of a pigeon shelter on his property. The challenged portion of the ordinance reads:
"Accessory uses shall not be deemed to include any building or structure or any part thereof used for the housing or sheltering of birds, poultry or animals unless such buildings or structures constitute part of an existing agricultural establishment."
The trial court entered judgment declaring the quoted section of the ordinance "invalid, arbitrary, capricious and unreasonable, insofar as the same prohibits the plaintiff from maintaining a shelter for racing pigeons" and directed that the requested permit be issued. The municipal defendants appeal.
Plaintiff's dwelling is situate on a parcel of land 65' x 285' located in a Residence "A" District. His house was constructed in 1964, at which time he built to the rear thereof a pigeon coop 30 feet in length where he keeps, as a hobby, approximately 20 pairs of homing or racing pigeons. Before *61 the completion of the pigeon coop he was advised by the building inspector that a variance from the terms of the zoning ordinance would be necessary. In August 1964, and again in May 1966, he sought a variance from the zoning board of adjustment and, on each occasion, his application was denied.
The building inspector testified that plaintiff's premises are located in one of the "better" residential sections of the community where the density of population is "quite high" and that close to 500 homes have been erected within the specific area during the past ten years.
The record reveals conflicting testimony of the neighbors as to the existence and extent of pigeon droppings on their properties and the prevalence of annoyances such as noise, odor or vermin attributable to plaintiff's pigeons or wild pigeons they allegedly attract to the vicinity.
There was wide disparity in the evidence adduced from the expert witnesses as to the health hazards incident to raising trained pigeons. Dr. Leon Whitney, a retired veterinarian "presently engaged in research mostly with pigeons and dogs," testifying for plaintiff stated that he had inspected the pigeon loft on the morning of the trial. The doctor found no overcrowding of the birds, no odors outside the shelter, no audible noise beyond 25 feet from the structure and no "signs of bad health of the pigeons or the area." He characterized the shelter as being cared for "excellently." Throughout his testimony, however, it was developed that pigeon manure is a source of human diseases; common pigeons are attracted by racing pigeons; in the event pigeon lofts are not properly cleaned, parasitic diseases may develop among the pigeon flock, incidents of vermin attraction would be increased, and there would be a detrimental health factor.
Dr. William Carter, a veterinarian employed by the New Jersey State Department of Health, gave evidence on behalf of the township that pigeons are transmitters of many human diseases and that the keeping of racing pigeons could "very probably * * * affect the public health."
*62 The trial judge, in ruling in plaintiff's favor, expressed the view that:
"* * * The law should not be interpreted to prohibit or restrict any such use of private premises unless it is of such a nature or pursued to such an extent as to impair the residential character of the neighborhood or such an interpretation is otherwise clearly necessary in the interests of the public health, safety or general welfare."
He relied heavily upon Borough of Chatham v. Donaldson, 69 N.J. Super. 277, 282 (App. Div. 1961), for the proposition that the family use of the home includes recreational advantages, and pursuit of a hobby is clearly "a part of recreational activities." He also gave weight to the case of Hahn v. City of Brooklyn, 153 N.E.2d 359 (C.P. 1958), where an ordinance which prohibited, among other things, the raising of pigeons, was held to be arbitrary, discriminatory and unreasonable as to plaintiff who maintained and raised homing pigeons. We are not convinced that these authorities control in the instant circumstances, and disagree with the conclusion reached by the Law Division.
Chatham was concerned with an "accessory use" of a driveway for the parking of the owner's four automobiles and it did not involve a direct ordinance prohibition or any potential health problem. The Hahn court construed a city ordinance promulgated under the general police power; it was not a zoning ordinance that set forth specific purposes and classified compatible uses under a comprehensive plan. Cf. Andover Tp. v. Lake, 89 N.J. Super. 313, 320 (App. Div. 1965); 1 Rathkopf, The Law of Zoning and Planning (3d ed. 1957), p. 15-5. Moreover, in Hahn the neighbors of the pigeon fancier testified that they were not disturbed in any way by plaintiff's pigeons and the medical testimony was all in plaintiff's favor.
A landmark case discussing municipal regulations applicable to pigeons is Barkmann v. Town of Hempstead, 45 N.Y.S.2d 675 (Sup. Ct. 1944), reversed 268 App. Div. 785, 49 N.Y.S.2d 262 (App. Div. 1944), affirmed 294 N.Y. *63 805, 62 N.E.2d 238 (Ct. App. 1945). There the trial court found that the town zoning ordinance proscribing, among other things, the use of any structure for the harboring of pigeons in a rural or semi-rural area of the municipality, was invalid as unreasonable. The Appellate Division, after noting "to what extent pigeons are a nuisance in a particular area is, in the first instance, a legislative matter," concluded that it may not be said that the controverted section of the ordinance
"* * * is void and unconstitutional because of unreasonableness, in a case which concerns the keeping of pigeons as a pastime and which leaves undisturbed the full use of the premises for all proper and usual purposes theretofore enjoyed." 49 N.Y.S.2d at p. 264
The Court of Appeals affirmed the Appellate Division in a short per curiam opinion.
In People v. Miller, 304 N.Y. 105, 106 N.E.2d 34 (Ct. App. 1952), the Court of Appeals adopted the rationale of Barkmann in a decision holding that defendant's harboring of pigeons as a hobby was an inconsequential use and did not amount to a "vested right" which could continue as a non-conforming use as against an amendment of the zoning ordinance which forbade keeping pigeons.
One of the purposes of zoning, as stated in N.J.S.A. 40:55-32, is to "promote health, morals or the general welfare." Plainly, the amended prohibitory ordinance under review is grounded upon a health-community-welfare concept and bears a reasonable relationship to the purposes of zoning. See Morris v. Postma, 41 N.J. 354, 360 (1964); note, 8 McQuillin, Municipal Corporations (3d ed. 1965 rev. vol.), § 25.21.
We cannot pass upon the wisdom or lack of wisdom of a particular municipal ordinance and will interfere only if the presumption in favor of its validity is overcome by an affirmative showing that it is unreasonable and arbitrary. See Kozesnik v. Montgomery Tp., 24 N.J. 154, 167 (1957); Vickers v. Tp. Com. of Gloucester Tp., 37 N.J. 232, 242 *64 (1962), appeal dismissed and certiorari denied 371 U.S. 233, 83 S.Ct. 326, 9 L.Ed.2d 495 (1963); Bellings v. Denville Tp., 96 N.J. Super. 351, 356 (App. Div. 1967); vide Cunningham, "Control of Land Use in New Jersey by Means of Zoning," 14 Rutgers L. Rev. 37, 48 (1959). "The validity of a zoning ordinance is not to be determined by reference to a single individual property." Fischer v. Bedminster Tp., 11 N.J. 194, 206 (1952); Vickers, supra, at p. 250. As stated in the latter case:
"* * * By these standards which control judicial review, the plaintiff to prevail must show beyond debate that the Township in adopting the challenged amendment transgressed the standards of R.S. 40:55-32 N.J.S.A. In other words, if the amendment presented a debatable issue we cannot nullify the township's decision that its welfare would be advanced by the action it took." 37 N.J., at p. 242
Judgment reversed.