THE CITY OF DES PLAINES, Plaintiff-Appellant, *v.* ANTHONY GACS, Defendant-Appellee.

First District (4th Division)   No. 76-304

Opinion filed October 5, 1978.

Charles R. Hug, of Des Plaines, for appellant.

Robert D. Michaels, of Des Plaines, for appellee.

Mr. JUSTICE LINN delivered the opinion of the court:
The City of Des Plaines, in a quasi-criminal action, charged defendant,

Anthony Gacs, with keeping pigeons within the city limits, in violation of section 6—3—14 of the Des Plaines Municipal Code (Des Plaines City Code, ch. 3, §6—3—14). The trial court held the city ordinance unconstitutional and thereby found the defendant not guilty.

The City of Des Plaines appeals, contending the ordinance is a legitimate exercise of its police powers and is constitutional as applied to the defendant.

We agree and reverse the trial court.

In 1963 the City of Des Plaines enacted the following ordinance:

"6—3—14: KEEPING OF FOWL PROHIBITED: It shall be unlawful and it is hereby declared to be a nuisance to raise, maintain or have upon any property within the City any chickens, ducks, geese, guinea hens, pigeons or other similar fowl."

On February 4, 1975, the defendant, Anthony Gacs, was charged with violating this ordinance by knowingly keeping racing pigeons on his premises.

It was stipulated at trial that the defendant owned and maintained approximately 50 pedigreed racing pigeons at his Des Plaines home. It was also stipulated that the facility which housed the pigeons was clean and sanitary.

At trial, the city presented Marvin Martin as an expert witness on its behalf. Martin was serving his fourth year as a Des Plaines city sanitarian. Martin had previously served as a sanitarian with the City of Park Ridge for 11 years.

Martin testified that, in his opinion, pigeons pose a contamination hazard. He stated that pigeons are proven carriers of such diseases as encephalitis, ornithosis, newcastle disease, salmonellosis and pig dysentery. Furthermore, pigeon droppings could communicate these diseases to human beings. Martin concluded his testimony by stating that the keeping of racing pigeons, within the city limits, detrimentally affects the public health and welfare of the city residents and that the ordinance in question was, therefore, reasonable.

The defendant called James A. Ruzek to testify as an expert witness on his behalf. Ruzek is secretary-treasurer of the Greater Chicago Combine and A. V. Center, an affiliate of American Racing Pigeon Union, Inc. Ruzek testified that racing pigeons are exercised two times a day, for one-half hour in the morning and one-half hour in the afternoon. Ruzek testified further that racing pigeons do not contact birds which are carriers of disease.

During his testimony, Ruzek claimed that a study was conducted by Marquette University and the University of Illinois which demonstrated that racing pigeons are not disease carriers. On cross-examination,

however, Ruzek stated that he did not have copies of this study available.

The defendant was granted permission to file data with the court for its consideration. Among the data filed is an article by Wendell M. Levi entitled "Domestic Pigeons Do Not Carry Or Spread Diseases To Human Beings."

After considering the evidence and the arguments of counsel, the trial court found the city's ordinance unconstitutional and unreasonable as applied to the defendant and thereby found the defendant not guilty of the charge. The City of Des Plaines has taken this appeal.

OPINION

I

Initially, defendant contends that the City of Des Plaines lacked authority to adopt the ordinance in question. We disagree.

The testimony at trial demonstrates that the Des Plaines city council enacted the ordinance to protect the health and safety of its citizens. More specifically, the city council, in exercising its discretion to pass this ordinance, found that pigeons are disease carriers and a serious contamination hazard to the community.

■■ The Illinois Municipal Code grants to a municipality the power to enact any ordinance it deems necessary for the promotion of health or the suppression of diseases. (Ill. Rev. Stat. 1977, ch. 24, pars. 1—2—1, 11—20—5.) In addition, a municipality may "define, prevent, and abate nuisances" (Ill. Rev. Stat. 1977, ch. 24, par. 11—60—2) and may "pass and enforce all necessary police ordinances" (Ill. Rev. Stat. 1977, ch. 24, par. 11—1—11). It has been stated repeatedly that the most important police power possessed by a municipality is its power to protect the health and safety of the community. *Village of Spillertown v. Prewitt* (1961), 21 Ill. 2d 228, 171 N.E.2d 582; *Father Basil's Lodge, Inc. v. City of Chicago* (1946), 393 Ill. 246, 65 N.E.2d 805.

■■ We find that there is adequate statutory authority to support the enactment of this ordinance by the City of Des Plaines.

II

However, merely concluding that the ordinance was enacted pursuant to valid legislative authority does not resolve defendant's challenge to its validity. To be beyond the pale of constitutional infirmity, the ordinance must also be reasonably related to the purpose it is intended to serve, in this case the protection of the public health and safety. (*Schuringa v. City of Chicago* (1964), 30 Ill. 2d 504, 198 N.E.2d 326, *cert. denied* (1965), 379 U.S. 964, 13 L. Ed. 2d 558, 85 S. Ct. 655; *Cheetah Enterprises, Inc. v. County of Lake* (1974), 22 Ill. App. 3d 306, 317 N.E.2d 129.) The

reasonableness of an ordinance is a question of law for the court. *City of Chicago v. Clark* (1935), 359 Ill. 374, 194 N.E. 537; *Greyhound Lines, Inc. v. City of Chicago* (1974), 24 Ill. App. 3d 718, 321 N.E.2d 293.

■■ Since we have determined that competent authority exists for the passage of this ordinance, "the presumption is * * * in favor of its validity. [Citation.]" (*City of Ottawa v. Brown* (1939), 372 Ill. 468, 471, 24 N.E.2d 363, 365; *Henson v. City of Chicago* (1953), 415 Ill. 564, 114 N.E.2d 778.) This cloak of presumptive validity is especially strong here since the policy of this State is to favor legislation designed to preserve the public health and safety (*Greyhound Lines, Inc. v. City of Chicago* (1974), 24 Ill. App. 3d 718, 321 N.E.2d 293).

■■ As the party challenging the validity of the ordinance, the defendant must establish by clear and affirmative evidence that the ordinance, as applied to him, is palpably arbitrary, capricious, and unreasonable and bears no rational relationship to the health and safety of the community. (*City of Decatur v. Chasteen* (1960), 19 Ill. 2d 204, 166 N.E.2d 29; *Greyhound Lines, Inc. v. City of Chicago* (1974), 24 Ill. App. 3d 718, 321 N.E.2d 293.) If there is any room for a legitimate difference of opinion concerning the reasonableness of this ordinance, the legislative judgment of the Des Plaines city council must prevail. *Schuringa v. City of Chicago* (1964), 30 Ill. 2d 504, 198 N.E.2d 326, *cert. denied* (1965), 379 U.S. 964, 13 L. Ed. 2d 558, 85 S. Ct. 655; *Toushin v. City of Chicago* (1974), 23 Ill. App. 3d 797, 320 N.E.2d 202.

As noted previously, the Des Plaines city council enacted this ordinance to protect the health and safety of its citizens. The city council found that pigeons are disease carriers and a serious contamination hazard to the community. Aside from the strong presumption of validity which arises in its favor, the need and reasonableness of this ordinance is supported by the unequivocal testimony of the city's expert witness, Marvin Martin. Martin testified that pigeons are proven disease carriers, that pigeon droppings can communicate these diseases to human beings, and that keeping pigeons within the city limits poses a significant health problem.

In attempting to establish the unreasonableness of this ordinance as applied to him, the defendant contends that pedigreed racing pigeons, as distinguished from ordinary public-park pigeons, are not disease carriers. A review of the data defendant submitted at trial, however, discloses a lack of support for this contention.

A reading of the article by Wendell M. Levi, entitled "Domestic Pigeons Do Not Carry or Spread Diseases To Human Beings" is particularly revealing. This article actually supports the city's position in this case. Aside from what the title may suggest, the author admits that pedigreed racing pigeons are indeed a potential contamination source for certain diseases.

With regard to the diseases known as "Cryptococcosia," Wendell has this to say in his article:

"[T]he fungus has been isolated * * * from pigeon droppings * * *. It is only in recent years that it has been discovered in the manure from pigeons. It causes disease * * * in man."

"Histoplasmosis" is another disease Wendell comments on:

"The only incrimination of the pigeon is through the possible growth of the organism in pigeon droppings.

* * *

Unless one goes out of his way to breathe a lot of dust carrying the spores of the fungus in the air, there doesn't seem to be *too much* likelihood of infection * * *." (Emphasis added.)

"Toxoplasmosis" is a rare disease that may also cause acute infection. Wendell states that racing pigeons have been a reported source of this disease.

The disease known as "ornithosis" starts as a mild form of pneumonia and can be fatal. This disease has been contracted from racing pigeons in the past. In discussing this disease, Wendell states rather ambiguously: "[T]he virus, for some unknown reason, has *largely* disappeared from pigeons." The support for this statement consisted of one superficial letter from a doctor in California, who stated that he was having trouble locating pigeons in that State infected with this disease. Wendell concluded his discussion of "ornithosis" with the following statement:

"Since today we have antibiotics, the chances of a [person] being *fatally infected* with the virus are so negligible as to present little cause for concern."

■ From a review of all the evidence, we are compelled to find that the defendant has failed to carry his burden in attempting to establish that the ordinance, as applied to him, constitutes arbitrary, capricious or unreasonable municipal action. (See *Hourun v. Township Committee* (1968), 99 N.J. Super. 58, 238 A.2d 501.) *At best* the evidence with respect to whether racing pigeons are disease carriers and a significant health hazard to the community presents only a debatable question over which there is room for honest difference of opinion.

A municipality, by necessity, must have wide discretion in the enactment of laws for the protection of the public health and safety and for the promotion of the general welfare. (*Cheetah Enterprises, Inc. v. County of Lake* (1974), 22 Ill. App. 3d 306, 317 N.E.2d 129.) The Des Plaines city council reasonably believed that prohibiting the keeping of racing pigeons within its city limits was necessary for the protection of the public health. That determination cannot be interfered with. *Greyhound Lines, Inc. v. City of Chicago* (1974), 24 Ill. App. 3d 718, 321 N.E.2d 293.

## III

■■ In the trial court, the defendant contended that the doctrines of laches and equitable estoppel prevented the city from enforcing this ordinance against him. The defendant, however, has not raised or argued these doctrines on this appeal and has therefore waived those points. Ill. Rev. Stat. 1977, ch. 110A, pars. 341(e)(7), 341(f); *Prather v. Lockwood* (1974), 19 Ill. App. 3d 146, 310 N.E.2d 815.

Even aside from the waiver principle, both contentions are without merit. The defendant reasoned that the doctrines of laches and equitable estoppel applied since the municipality had notice in 1971 that he kept and maintained racing pigeons at his Des Plaines home, but it failed to take action against him until 1975. Defendant alleged that, in the interim, he improved his pigeon facility at substantial expense, believing his actions to be legally proper.

■■ The doctrine of laches, however, has no application to the enforcement by a municipality of its ordinances. (See *City of Chicago v. Bernstein* (1949), 337 Ill. App. 649, 86 N.E.2d 286 (abstract).) Further, the defendant's improvement of his pigeon facility was not induced by any affirmative act on the part of the municipality. Consequently, the doctrine of equitable estoppel cannot be invoked against the city in this case. See *Lake Shore Riding Academy, Inc. v. Daley* (1976), 38 Ill. App. 3d 1000, 350 N.E.2d 17.

Accordingly, we reverse and remand for further proceedings in accordance with the views expressed herein.

JOHNSON, P. J., and DIERINGER, J., concur.