# JACOB ZELLERS

*v.*

# LAWRENCE WHITE.

*Opinion filed April 20, 1904.*

1. VARIANCE—*a variance must be pointed out with particularity.* A variance between the allegations and the proof, if relied upon as the ground of a motion to instruct the jury to find for the defendant, must be particularly specified in the motion.

2. SAME—*when variance in date of bill of particulars is not material.* Variance between date of the bill of particulars, as to the night plaintiff lost money at gambling, and the date proved, is not material, where it does not appear plaintiff was ever in defendant's place on any other occasion.

3. GAMBLING—*loser may sue proprietor of gaming house or the employee played with.* One losing by gambling with a person employed to play for the "house" by the proprietor of the gambling house where the play took place, may sue either the proprietor or the employee.

4. SAME—*effect where a game is played with "chips."* That a poker game is played with "chips," for which the players deposit with the house the amount of money represented by the "chips," instead of for cash stakes, does not make the losses any the less the "loss of money or other valuable thing," within the meaning of the statute.

5. SAME—*what constitutes a "sitting" at draw poker.* All that transpires in a game of draw poker from the time certain players begin playing together on one occasion until they cease playing together on such occasion is one "sitting," within the meaning of the statute, regardless of the number of hands played.

6. SAME—*who are "winners" at draw poker.* All persons who win more than they lose at one sitting of draw poker are "winners" to that amount, within the meaning of the statute, and are liable therefor to the persons losing, resort to equity being open, if necessary, to adjust the losses between the various parties.

7. STATUTES—*limits of the rule requiring strict construction of penal statute.* The rule requiring strict construction of a penal statute should not be so rigidly applied as to defeat the true intent and meaning of the statute.

*Zellers* v. *White,* 106 Ill. App. 183, affirmed.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of LaSalle county; the Hon. H. M. TRIMBLE, Judge, presiding.

This is a suit in assumpsit, brought on December 3, 1901, by Lawrence White, against Jacob Zellers, in the circuit court of LaSalle county. The declaration consisted of the common counts, with a copy of the account sued on. Before pleading to the declaration the defendant obtained a rule on the plaintiff to file a specific bill of particulars. This bill of particulars, when filed, showed the cause of action to be for "money lost gambling night Oct. 30-31, 1901, $100." Defendant then filed the general issue. The cause was tried before a jury, and a verdict was rendered in favor of the plaintiff for $70. After overruling a motion for a new trial made by the defendant the court rendered judgment upon the verdict. The Appellate Court for the Second District has affirmed this judgment, and Zellers now brings the cause to this court by writ of error.

During the trial of the cause leave was granted to the plaintiff, over defendant's objection, to amend the bill of particulars, by substituting the words and figures, "Oct. 31 and Nov. 1," for "Oct. 30-31."

The evidence as to whether the poker game in question took place on the night of October 31 and morning of November 1, or on the night of October 30 and morning of October 31, is conflicting. On all three of these dates, however, plaintiff in error was conducting a saloon and bowling alley on the first floor of a building in the city of Ottawa and gaming rooms on the second floor of that building. He at that time had working for him in the gaming rooms two men, named, respectively, Kaiser and Downey. Downey was manager of the gaming rooms and Kaiser was employed to operate a roulette wheel therein. On the night on which this game commenced, Zellers met White in the bowling alley, informed him that there would be a game of draw poker that night and asked him if he was going to stay around, to which White replied that he was. The game started about ten o'clock at night, with White, Downey, Kaiser and four

others in the game, and ended about 5:15 o'clock the
next morning, with White, Kaiser, Downey and one of the
other four men in the game. These men did not play with
money, but with chips furnished by Zellers' employees,
each chip representing a certain sum of money deposited
with the employee, and the house would redeem the chip
when presented by the holder thereof. White paid for
the chips furnished him, but the evidence tends to show
that Kaiser and Downey did not pay for those furnished
them; that they were playing for Zellers, and that any
money or chips won by them belonged to Zellers. At
the conclusion of the game White had paid $80 for chips
and had lost all of his chips in the game. Zellers and
Downey had won a larger amount. They did not pre-
sent these chips for redemption, but Zellers came to the
room, took all the money from the till which had been
paid in for chips, including the $80 paid by White, and
took it away with him. A few days afterwards White
demanded of Zellers the money lost by him in this game.
Zellers refused to give it to him, and White thereupon
commenced this suit.

Immediately after plaintiff had rested his case the
defendant moved the court to instruct the jury to find
for the defendant. The motion was renewed and an
instruction advising the jury to find for the defendant
offered at the close of all the evidence. The court over-
ruled the motion and refused the instruction, which is
assigned as error. Other grounds urged for reversing
the judgment are, that the court permitted the bill of
particulars to be amended during the trial; that it re-
fused to admit evidence offered by plaintiff in error to
show that White swore before the grand jury that the
game took place on October 26 and 27, and that it per-
mitted White to testify that Downey and Kaiser got the
losings. The giving of instructions numbered 2, 3, 4, 5
and 6 for defendant in error, refusing instructions num-
bered 12, 13, 14, 15, 16, 17, 18, 19 and 20 offered by plain-

tiff in error, and modifying instructions numbered 8, 10 and 11, also offered by plaintiff in error, are pointed out as errors committed by the trial court necessitating a reversal of the cause.

HENRY M. KELLY, (M. T. MOLONEY, of counsel,) for plaintiff in error:

Section 132 of the Criminal Code, providing for the recovery of money lost at gambling, is a penal statute in derogation of the common law, and is to be strictly construed. *Life Ins. Co.* v. *Newton,* 89 Ill. App. 354.

In an action to recover money lost at gambling under section 132 of the Criminal Code, the winner, and not the keeper of the house in which the money was won, is liable to the loser. *Ranney* v. *Flinn,* 60 Ill. App. 104.

The broker, commission man or agent is considered as the winner, within the meaning of that word as employed in the statute, under section 130 or 132 of the Criminal Code, and not the party for whom they deal. "The doctrine of agency has no application to the matter, so far as the question of the violation of this penal statute is concerned." *Kruse* v. *Kennett,* 181 Ill. 199; *Pearce* v. *Foote,* 113 id. 228; *Jamison* v. *Wallace,* 167 id. 388.

When the statute of a State provides the form and manner of pleading in a penal action, the statute must be correctly followed and referred to, and a variance in this respect is fatal. *People* v. *Plank Road Co.* 64 Mich. 618.

The general rule is that a penal statute will be strictly construed, and never enlarged or extended, by construction or implication, to either persons or things not expressly brought within its terms. *Raplee* v. *Morgan,* 2 Scam. 561; *Chicago* v. *Rumpff,* 45 Ill. 90; *Bullock* v. *Goemble,* id. 218; *People* v. *Peacock,* 98 id. 172; *Waddle* v. *Duncan,* 63 id. 223; *Edwards* v. *Hill,* 11 id. 22; *Reinecke* v. *People,* 15 Ill. App. 241; *Railroad Co.* v. *People,* 42 id. 387; *Railway Co.* v. *Altamont,* 84 id. 274.

GEORGE H. HAIGHT, for defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Section 132 of chapter 38 of Hurd's Revised Statutes of 1901 reads as follows: "Any person who shall, at any time or sitting, by playing at cards, dice or any other game or games, or by betting on the side or hands of such as do game, or by any wager or bet upon any race, fight, pastime, sport, lot, chance, casualty, election or unknown or contingent event whatever, lose to any person, so playing or betting, any sum of money, or other valuable thing, amounting in the whole to the sum of $10, and shall pay or deliver the same or any part thereof, the person so losing and paying or delivering the same shall be at liberty to sue for and recover the money, goods or other valuable thing, so lost and paid or delivered, or any part thereof, or the full value of the same, by action of debt, replevin, assumpsit or trover, or proceeding in chancery, from the winner thereof, with costs, in any court of competent jurisdiction. In any such action at law it shall be sufficient for the plaintiff to declare generally as in actions of debt or assumpsit for money had and received by the defendant to the plaintiff's use, or as in actions of replevin or trover upon a supposed finding and the detaining or converting the property of the plaintiff to the use of the defendant, whereby an action hath accrued to the plaintiff according to the form of this act, without setting forth the special matter."

This suit is to recover money lost at draw poker. The declaration is an ordinary declaration in assumpsit, and does not refer in apt language, as it should do, to the act of which said section is a part, for the purpose of showing that it counts thereon. At the close of the evidence for White, the plaintiff, Zellers, the defendant, moved the court to instruct the jury to find a verdict for the defendant, and it is now stated that one of the grounds was a variance between the pleadings and the proof resulting from this omission in the declaration. The motion was not in writing. At the time of making it,

counsel tendered an instruction in the following words: "The court instructs the jury that the plaintiff has failed to show by any evidence that he played cards with defendant on the 31st day of October or 1st day of November, 1901, or that he lost money to defendant on those days in the playing of cards, and you will therefore return the following verdict: 'We, the jury, find for defendant; no cause of action.'" As the motion itself did not specify any ground upon which it was based, and as the instruction offered in connection therewith does show the ground upon which the defendant sought to have the jury instructed in his favor, the defendant can not now be heard to urge that the motion was based upon the failure of *allegata et probata* to agree.

A variance between the averments of the declaration and the proof, which is the ground of a motion to instruct the jury to find for defendant at the close of the plaintiff's evidence, must be particularly specified in the motion. *Probst Construction Co.* v. *Foley*, 166 Ill. 31; *Illinois Central Railroad Co.* v. *Behrens*, 208 id. 20.

We will therefore not consider the error assigned in this regard. Had this matter been properly called to the attention of the court, the declaration could, and no doubt would, have been amended and the objection obviated.

Again at the close of all the evidence the defendant moved the court to instruct the jury for the defendant, and it is now urged that there is in the record no evidence which tends to support the verdict. It appears from the evidence of plaintiff, which, for the purposes of this motion, must be taken as true, that he began playing draw poker at about 10 P. M. and continued until about 5 A. M. the next morning; that among those playing were Frank Downey and Chester Kaiser, who were in Zellers' employ and playing for him; that plaintiff lost during the time $80 and that Downey and Kaiser won a little over $100, which was made up of the $80 lost by

plaintiff and small amounts lost by others. The money lost by plaintiff was not all lost on any one hand, nor, in the first instance, was it all won by either Downey or Kaiser. Some portions of his losses passed to other persons in the game temporarily, and finally from them to the agents of Zellers, so that in the end they were the only winners and had won an amount in excess of the losses of the plaintiff. The game was not played by betting money directly. Chips were purchased from Zellers, or "the house," as the witnesses expressed it, and at the end of the game or sitting, if the purchaser by any chance had any of the chips left or if they had been won by persons other than Zellers' agents, the house redeemed them, paying for each the price for which it had been sold.

It is first urged that as Zellers, in person, did not play in the game there can be no recovery from him. We think this too narrow a construction of the statute. It appears from the evidence that in his gambling room roulette was also played. If the position of counsel be correct and Zellers employed an insolvent individual to operate the wheel for him, as a result of which the wheel or the operator won the money of the player for Zellers as the proprietor, the player would be unable to recover from the winner. The proposition carries with it its own answer. What Zellers did by another in this instance he did by himself, and he is responsible for the money won for him by such other. Plaintiff could sue the agent or the principal, at his election.

Plaintiff in error relies upon the case of *Kruse* v. *Kennett*, 181 Ill. 199, as authority for the statement that the doctrine of agency has no application so far as the question of the violation of this penal statute is concerned. In that case the suit was brought against brokers or commission agents to recover money lost in gambling in grain options, and in response to the contention that the plaintiff should have brought his suit against the person or persons with whom the brokers had transac-

tions to counter-balance those of plaintiff, and who, in fact, profited by the losses of the plaintiff, it was held that the broker was a "winner," within the meaning of the statute, but there was no holding that the suit could not be maintained against such other person or persons who had profited by the transaction.

It is then said that because that which was actually staked on the game was the chips, and there is no evidence in this record that they had any intrinsic value, there is no evidence of the loss of "money or other valuable thing, amounting in the whole to the sum of $10." The correct view is that the chips were merely markers to indicate the amount of the money lost or won, the money itself being actually deposited with the gaming-house keeper as a stakeholder, to be paid by him to the owner thereof as such owner was indicated by the possession of the chips which the keeper had given in exchange therefor, and that the loss of the chips was a loss of the money which they represented.

Attention is then called to the fact that many hands of draw poker were played,—one every two minutes, according to the statement of the defendant,—during the hours the plaintiff was engaged in play, and that each hand is a game, and that in each hand the plaintiff would win or lose; that when he lost and that hand was played the transaction was ended; and the person to whom that loss was paid, it is urged, is the only person from whom such loss could be recovered, and that the plaintiff could not recover money which he had so lost to some person other than the defendant's agents, because, in the end, such agents won the money from such other person who had in the first instance won it from the plaintiff. Counsel urge that a strict construction of the statute leads to this conclusion, and authorities are cited in support of the doctrine that penal statutes should be strictly construed. This is the general rule, but it is only one of the rules to be applied in determining the meaning of

an enactment of that character. In *Hamer* v. *People*, 205 Ill. 570, the following language from Sedgwick on Construction of Statutes was cited with approval (p. 573): "The rule that statutes of this class are to be construed strictly is far from being a rigid and unbending one, or, rather, it has in modern times been so modified and explained away as to mean little more than that penal provisions, like all others, are to be fairly construed according to the legislative intent as expressed in the enactment." And in that case it was also said that the object of construing penal statutes, and all other statutes, is to discover and give effect to the true legislative intent, and the rule requiring strict construction of penal statutes is not to be applied with such unreasonable strictness as to defeat the true intent and meaning of the enactment. The purpose of the legislature in the enactment of this statute was to lessen, and, if possible, to prevent, gambling. The evils resulting therefrom are among the most pernicious that afflict modern society. The practice destroys in its devotees all desire to engage in legitimate employment or business. The loser becomes intent on recovering his losses at the gaming table and is frequently driven to embezzlement and theft. The winner acquires a contempt for the small gains of honest pursuits. He spends the profits of unlawful hours in idleness and debauchery, among dissolute companions. Thrift is destroyed. Wholesome pleasures soon pall upon the taste. The ties of home and domestic life are disregarded, and eventually annihilated, by the craze for gaming and by the feverish excitement with which it fires its followers. Being itself unlawful, it creates and encourages contempt for all law, weakens every legal restraint and every honest impulse. Financial ruin and moral degradation alike inevitably overtake every man who cannot resist its allurements, no matter with what degree of skill he engages in the nefarious business. Section 132, *supra,* is calculated to make its gains un-

availing to the winner, and to remove, to some extent, at least, the incentive to play. If the loser, after a long night at draw poker, must sue the man who won from him on each hand for the amount lost on that hand, and cannot have this remedy unless the sum so lost on that hand equal or exceed $10, the statute, for all practical purposes, would not be applicable to draw poker. This form of gambling became so common recently that it was denominated the national game of the American people. Its peculiar terms and phrases have found their way into common use in our language, where their aptness for the purposes for which they have been borrowed attracts the attention of many to this game and no doubt leads them to a closer acquaintance with it, when, but for a familiarity with its expressions thus obtained, they would not have sought its beguilements. The interpretation placed upon this statute by defendant, so far as this seductive game is concerned, would enable the winner to substantially escape the salutary and chastening effect of this law and deprive him of the refined pleasure which results from making restitution for wrongdoing. The legislature certainly did not intend that this game, which is a very common vice, should escape the ban of this section of the Criminal Code.

Keeping in view the wrong at which the statute is aimed, and giving consideration to the use of the word "sitting," in this section, we think the proper construction is, that all that transpires in playing the game of draw poker from the time certain players begin playing together on any one occasion until they cease playing together on that occasion, no matter how many hands are played, may be regarded as one transaction or "sitting," and that all those who have won more than they have lost during the sitting are "winners" and all those who have lost more than they have won during the sitting are persons "losing," within the meaning of the statute; that all money or other valuable thing staked upon

the game at any time during the sitting is to be regarded as in play so long as the sitting continues, and that the liability of the winner to the person or persons losing is measured by the net amount of his own winnings. Resort may be had to equity where necessary for the purpose of making proper adjustments between the various winners and the various losers.

It is also claimed that there was a variance between the proof fixing the date when the gambling occurred and the bill of particulars filed with the declaration. We do not regard the statement of the date in this bill of particulars as material. It does not appear that plaintiff ever played in defendant's gaming room except on this occasion. There are cases where the court below may, on motion, properly require the plaintiff to particularly identify, by date or otherwise, in his statement of account, the transaction or transactions on which he relies, and the plaintiff may be required to confine his proof to transactions so identified. Such a case was not here presented.

We think the rulings upon the admissibility of evidence correct.

What we have said disposes of objections to the action of the court in passing on instructions except as to instruction No. 4 given on the part of the plaintiff, which contains this language: "No winning of the plaintiff can be set off against his demand for loss in this suit unless obtained from the defendant at the same sitting." The objection to this instruction is, that the word "defendant" should have been followed by the words "or his agent or agents." There is no question of any set-off on account of winnings in the case. Plaintiff only sought to recover the net amount of his losses. Defendant did not offer evidence of any winnings that should have been deducted or set off. The error in the instruction, if any, was harmless.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*