JENNIE SWICK

*v.*

JAMES COLEMAN *et al.*

*Opinion filed October 24, 1905—Rehearing denied Dec. 6, 1905.*

1. ADOPTION—*descent of property—section 6 of Adoption act construed.* Section 6 of the Adoption act, providing that the adoptive parents shall inherit from the adopted child or its descendants, husband or wife, only such property, with the accumulations, income and profits thereof, as shall have been taken by such adopted child through its adoptive parents, does not restrict the right of inheritance of such parents and their heirs to the identical property received by the adopted child, but includes proceeds thereof.

2. SAME—*when heirs of an adoptive parent will take from descendant of an adopted child—illegitimates.* Where an adopted illegitimate child receives by devise from an adoptive parent a farm, which she sells, having the proceeds thereof on hand at her death, which occurs shortly after she has given birth to an illegitimate child which survives its mother only a few months, the heirs of the adoptive parent, and not the natural mother of the adopted child, will inherit the proceeds of the farm, under section 6 of the Adoption act.

3. STATUTES—*when maxim of construction will not be applied.* The maxim of construction that the expression of one thing is the exclusion of another is to be applied only when it appears to point to the legislative intent, and never to defeat the plainly indicated purpose of the law-making body.

218—3

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding.

EUGENE CLIFFORD, for appellant.

WILLIAMS, LAWRENCE & WELSH, and A. S. GREEN, (ASHCRAFT & ASHCRAFT, of counsel,) for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

Nellie, the illegitimate daughter of the appellant, was legally adopted by Betsie E. German and John E. German, husband and wife, as their child. Betsie E. German was the owner, in her own right, of a farm in Knox county. She died intestate, leaving her husband and said Nellie. The title to the farm thereupon descended to Nellie, subject to the dower right of John E. German. Said John E. German re-married and became the father of two children, and died intestate. The dower interest of John E. German in the farm ceased at his death and Nellie became the sole owner thereof. Nellie sold the farm which she thus inherited, and subsequently gave birth to an illegitimate daughter, Myrtle J. Nellie survived the birth of Myrtle but a short time, and soon after her death Myrtle also died, being then of the age of only four months. At the time of her death Nellie had the proceeds of the sale of the farm intact and had no other property. It is conceded by all parties that at the death of Nellie this property descended to and became the property of Myrtle. As before stated, Myrtle died while an infant of the age of but four months, and left the property in the same form and condition as it was when her mother, Nellie, died. Upon the death of Myrtle the probate court of Cook county was called upon to determine to whom the estate of Myrtle should be distributed. Myrtle had no other kindred by blood than the appellant, Jennie Swick, the mother of Nellie and the grandmother of Myrtle. Betsie E. German, deceased, left surviving brothers and sisters. John E. German left

surviving him two children. All of these parties appeared in the probate court as claimants, and the court ruled that Jennie Swick was not entitled to take by inheritance, but that the estate descended to the brothers and sisters of Betsie E. German and the two children of John E. German. This decision was satisfactory to all of the parties in interest except Jennie Swick, who prosecuted an appeal to the circuit court of Cook county. The circuit court held that Jennie Swick succeeded to the title to the entire estate. The brothers and sisters of Betsie E. and the children of John E. German perfected an appeal to the Appellate Court for the First District to reverse the judgment of the circuit court. The Appellate Court reversed the judgment of the circuit court and affirmed the order and judgment entered in the probate court. Jennie Swick has perfected this appeal from the judgment of the Appellate Court.

All parties in interest except Jennie Swick have abided the judgment of the probate court. The action taken by that court has, then, become conclusive as to all except her. Whether the probate court should have held her entitled to the property as the only heir of Myrtle J. is the sole question here to be obtained.

The general statutes of descent do not apply to the descent of property owned by a deceased illegitimate person. Section 2 of chapter 39, (2 Starr & Cur. Stat. p. 1429,) entitled "Descent," controls the descent of the property of illegitimates. The second, fourth and fifth subdivisions of section 2 are as follows:

"*Second*—The estate, real and personal, of an illegitimate person, shall descend to and vest in the widow or surviving husband and children, as the estate of other persons in like cases.

"*Fourth*—When there is no widow or surviving husband, and no child or descendants of a child, the estate of such person shall descend to and vest in the mother and her children, and their descendants—one-half to the mother, and

the other half to be equally divided between her children and their descendants, the descendants of a child taking the share of their deceased parent or ancestor.

"*Fifth*—In case there is no heir as above provided, the estate of such person shall descend to and vest in the next of kin to the mother of such intestate, according to the rule of the civil law."

Myrtle J. left no child, descendants of a child, husband, mother, child of her mother or descendants of a child of her mother, to take, and the appellant, Jennie Swick, the mother of Nellie and the grandmother of Myrtle, in the view of the circuit court became entitled to inherit the property under the provisions of the fifth subdivision of said section 2. But we think the descent of this particular property here involved does not fall within the range of the statute regulating, in general, the descent of the property of a deceased illegitimate person. The property here to be distributed is that which Nellie, the mother of Myrtle J., the deceased intestate and the adopted daughter of Betsie E. German, received for a farm, of which farm Nellie became the owner by inheritance, as the adopted daughter of said Betsie E., by virtue of the provisions of chapter 4 of the statute of this State (1 Starr & Cur. Stat. p. 353,) authorizing her adoption as the child of said Betsie E. German. This statute of adoption further provided for the devolution of such property as, under its provisions, should be inherited by the adopted child from the adoptive parent, and it is to that statute the courts must look in order to determine to whom such property descends. Sections 5 and 6 of the said statute, entitled "Adoption," are as follows:

"Sec. 5. A child so adopted shall be deemed, for the purpose of inheritance by such child, and his descendants and husband or wife, and other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock, except that he shall not be capable

of taking property expressly limited to the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation.

"Sec. 6. The parents by adoption and their heirs shall take by descent, from any child adopted under this or any other law of this State for the adoption of children, and the descendants, and husband or wife, of such child, only such property as he has taken or may hereafter take from or through the adopting parents, or either of them, either by gift, bequest, devise or descent, with the accumulations, income and profits thereof; and all laws of descent and rules of inheritance shall apply to and govern the descent of any such property, the same as if the child were the natural child of such parents; but the parents by adoption and their heirs shall not inherit any property which such child may take or have taken, by gift, bequest, devise or descent, from his kindred by blood."

Section 6 governs the descent of property which an adopted child has inherited or may inherit from the adoptive parent. This section first declares that the parents by adoption, and their heirs, shall take by descent from the adopted child or any child or descendants of such adopted child, and from the surviving husband or wife of such adopted child, all such property as shall have passed from the adoptive parents, or either of them, to the adopted child by gift, devise, bequest or descent. It is then further provided in the section that the laws of descent and rules of inheritance shall apply to and govern such property as the adopted child shall have received from the adoptive parents, the same as if the child were the natural child of such parents. Under the operation of this latter provision of this statute, property so acquired by an adopted child from an adoptive parent, on the death of the adopted child leaving, as did Nellie, a living child born of her body, would descend to such child, and by the earlier provision of the section the adoptive parents and their heirs would, on the death of the child of the adopted child, become

the heirs of such last named child, (in the absence of surviving husband and wife,) so far as the right of inheritance in and to such property is concerned. Therefore, upon the death of Nellie the proceeds of the sale of the farm which she had inherited from her adoptive mother descended to her child, Myrtle, and on the death of Myrtle, (without a surviving child, descendants of a child or surviving husband,) if the proceeds of the farm are subject to the operation of said section 6 as property received from the adoptive mother, such proceeds would pass by the rules of inheritance established, as we have seen, by said section 6, to the heirs of the adoptive parent or parents. Whether to the heirs of the adoptive mother only, from whom, in this instance, the property descended, or to the heirs of both the adoptive father and mother, is not presented, the heirs of both of the adoptive parents having voluntarily abided the decree, which held the property descended to the heirs of both adoptive parents. As to such proceeds, if the property, as we have said before, is to be considered as property acquired from the adoptive parents, within the meaning of section 6, the heirs of the adoptive parents would become the heirs of the said Myrtle, the same as they would had Nellie been the natural child of said adoptive parents. The appellant did not, therefore, on the death of Myrtle, inherit any property which the mother of said Myrtle received by inheritance from her adoptive mother, Betsie E. German, and which came to Myrtle by inheritance from her mother, Nellie.

But it is said Nellie disposed of the farm which she inherited from her adoptive mother, and that that which Myrtle inherited was not the property which Nellie had inherited from her adoptive parent, and that for this reason section 6 of the adoption statute does not apply, but that section 2 of the general statute regulating the descent, generally, of the property of illegitimates has application, and under the fourth subdivision thereof the appellant is entitled to succeed to the ownership of the assets of the estate of Myr-

tle, her illegitimate grand-daughter. The record shows the assets of the estate of Myrtle, the infant, consist wholly of that which her mother, Nellie, received from the sale of the farm which passed to Nellie by inheritance from her adoptive mother, Betsie E. German,—whether notes of the purchaser or cash paid by the purchaser does not appear. But we do not understand section 6 of the adoption statute to apply only to the identical property which has passed by inheritance to an adopted child. Such a construction is not required by the language of the act and is plainly not consistent with the spirit and intent of the enactment. Here we are required to direct the disposition of the identical property that was received from the sale of the farm, and we are to consult, as our guide, a statute which manifestly intends that the natural kindred, by blood, of the original owners of the farm, the adoptive parents, shall not be supplanted in the inheritance and ownership of property which came to the adopted child from the adoptive parents by those who are strangers to the blood of such adoptive parents, and who do not bear the relation of child or descendants of a child or surviving husband to the deceased. Section 6 unmistakably discloses the legislative intent to be that the beneficial interest in property which an adopted child has acquired by gift or inheritance from an adoptive parent shall, when the adopted child is dead and no child or descendants of such adopted child and no husband or wife survives, return to said adoptive parents, or their legal heirs, if they be no longer living. To hold that this rule of inheritance should only apply to the identical property which had so passed from the adoptive parent, and not to the identical thing which the adopted child had received for the particular property which came from the adoptive parent, would be too technical and narrow and altogether inconsistent with the well disclosed legislative intent and spirit. Section 6 provides that the accumulation, income and profits of property so acquired by an adopted child shall be inherited by the adoptive parents, and we think the

proceeds of such property should also be deemed to be within and governed by said section.

The argument that the inclusion in the section of the "accumulation, income and profits" of such property precludes the idea the section was intended to apply to "proceeds," under the maxim that the expression of one thing is the exclusion of another, cannot avail. This maxim, as is said in 26 American and English Encyclopedia of Law, (2d ed.) 605, is useful, and is to be applied only when it appears to point to the legislative intent, and never to defeat the plainly indicated purpose of the law-making body.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*