GREYHOUND LINES, INC., *et al.*, Plaintiffs-Appellants, Cross-Appellees, *v.* THE CITY OF CHICAGO, Defendant-Appellee, Cross-Appellant.

(No. 59298;

First District (2nd Division)—November 26, 1974.

Edward G. Finnegan, of Chicago, for appellant Greyhound Lines, Inc.

George P. Doyle of Indianapolis, Indiana, and Wilson & McIlvaine, of Chicago, for appellants Nik-O-Lok Co. and Universal Sanitation, Inc.

Richard L. Curry, Corporation Counsel, of Chicago (Daniel Pascale and Edmund Hatfield, Assistant Corporation Counsel, of counsel), for appellees.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs Greyhound Lines, Inc., the Nik-O-Loc Company and Universal Sanitation, Inc., filed a complaint in the circuit court of Cook County seeking a declaratory judgment that a municipal ordinance of the city of Chicago be declared unconstitutional and requesting a preliminary injunction enjoining the enforcement of the ordinance. The preliminary injunction was denied and a full hearing on the merits was conducted. In a written opinion, the trial court declared the ordinance

constitutional in all respects but found that compensation was due plaintiffs Nik-O-Loc and Universal and reserved jurisdiction to determine the amount. Plaintiffs appeal, challenging that part of the order finding the ordinance constitutional. Defendant, in its cross-appeal, challenges the finding that compensation is due.

On March 14, 1973, the Chicago City Council adopted an ordinance banning pay toilets in all municipal buildings and buildings open to serve the public. That ordinance is now section 5.11 of chapter 66 of the Chicago Municipal Code. The relevant parts of that ordinance provide as follows:

"It is prohibited to charge any sum of money for the use of any toilet facility in any municipally owned building or any building that is open to accommodate or serve the public.

As used herein 'building that is open to accommodate or serve the public' shall include the following:

Hotel, motel, inn, department store, restaurant, cafeteria, lunchroom, lunch counter, soda fountain, tavern, motion picture house, theatre, concert hall, sports arena, stadium or other place of exhibition or entertainment, airport, railroad station or terminal, bus station or terminal, clothing store, food store, gas station, garage, bank or office building."

Plaintiff Greyhound owned a bus terminal which contained a number of toilets most of which had coin locks on the stall doors prior to passage of the instant ordinance. Plaintiff Nik-O-Loc was a corporation manufacturing and leasing coin locks for use by its customers. Plaintiff Universal was a corporation which provided both coin locks and a sanitation service to its customers. On the day before the ordinance was to become effective, all plaintiffs brought the instant suit.

At trial, plaintiffs presented testimony to establish that toilets with coin locks were cleaner and more sanitary, better equipped, less prone to vandalism, a deterrent to crime, and safer. The city's evidence established that other Chicago ordinances required a certain minimum number of toilets in all buildings depending on the type and size of the building. Other city officials testified that they were required to inspect restrooms in certain public and private buildings.

The lower court declared the ordinance constitutional but found that Nik-O-Loc and Universal would suffer the loss of their investment in their locks and impairment of their contractual rights and thus were entitled to compensation.

Although both plaintiffs and defendant have briefed and argued numerous separate issues, it can fairly be said that the plaintiffs' appeal presents two related questions for review. Can the city properly legislate

in this area, and, if so, is the instant ordinance a reasonable exercise of that power? The city's cross-appeal presents a single issue for review. Does the ordinance result in a taking of property without due process of law so as to require an award of compensation?

■■ It must first be determined whether the challenged ordinance is a permissible exercise of authority by the city. By virtue of the 1970 Illinois Constitution, Chicago is a home rule unit. As such, Chicago has been granted the power "to regulate for the protection of the public health, safety, morals and welfare." (Ill. Const. art. VII, § 6(a).) Since a system for waste disposal and the regulation of lavatories are obviously related to the public health (see *Chicago Allis Manufacturing Corp. v. Metropolitan Sanitary District*, 52 Ill.2d 320, 288 N.E.2d 436), the power to enact the instant ordinance is constitutionally authorized. However, even assuming *arguendo* the absence of the constitutional grant of power, the legislature has specifically delegated such authority in the Illinois Municipal Code. (Ill. Rev. Stat. 1973, ch. 24, par. 1—1—1 *et seq.*) Section 11—20—5 of the Code permits every municipality to do all acts and make all regulations which may be necessary or expedient for the promotion of health or the suppression of diseases, including the regulation of plumbing and plumbing systems. Clearly, such a broad grant of authority would encompass the instant ordinance.

Moreover, the Illinois Plumbing Code (Ill. Rev. Stat. 1973, ch. 111½, pars. 116.68 *et seq.*) empowers the State Department of Public Health to promulgate a minimum code of standards for plumbing systems. Section 5 of the Code (Ill. Rev. Stat. 1973, ch. 111½, par. 116.72) authorizes municipalities to adopt the minimum code thus promulgated. As all parties concede, regulation 7.21 of the State Department of Public Health states:

> "[A]t least one-half (½) of the required fixtures installed in a building intended for public use shall be free from any device or arrangement requiring a fee to gain access."

Although the city admits that the regulation is advisory, not mandatory, and that the city has not adopted that specific regulation, the mere existence of such a regulation further indicates that the instant ordinance was within the city's permissible power.

■■ Finally, it must be noted that the city could successfully rely on the authority granted by the police power to legislate for the public health, safety, comfort and welfare. (*City of Chicago v. Wonder Heating & Ventilating Systems, Inc.*, 345 Ill. 496, 178 N.E. 192.) For although a municipality has no inherent police power, the State may and has, delegated to its municipalities the police power to protect the public health.

(Ill. Rev. Stat. 1973, ch. 24, par. 11—1—1.) The police power may properly be used to effectively promote the interests protected in the Illinois Municipal Code and the Illinois Plumbing Code discussed above. (*Father Basil's Lodge, Inc. v. City of Chicago*, 393 Ill. 246, 65 N.E.2d 805.) In this regard, the courts of this state have long recognized that plumbing and related waste-disposal systems and regulation have been a proper subject for the exercise of the police power. (See *People ex rel. McKeown v. Hurley*, 343 Ill.App. 413, 99 N.E.2d 355; *People v. Solomon*, 265 Ill. 28, 106 N.E. 458.) Accordingly, we now hold that the instant ordinance is intimately connected with the public health and therefore, was a proper exercise of both the express authority discussed above and the city's police power.

■■ However, merely deciding that the instant ordinance was a permissible exercise of the city's authority does not resolve the question of its validity. For a municipal ordinance passed pursuant to valid legislative authority must also bear a reasonable and substantial relation to the public health, safety or general welfare. (*Petterson v. City of Naperville*, 9 Ill.2d 233, 137 N.E.2d 371.) Similarly, where an ordinance is based on the inherent police power of the state, the means chosen must be reasonably necessary for the accomplishment of the intended purpose and not unduly oppressive upon individuals. (*Chicago Allis Manufacturing Corp. v. Metropolitan Sanitary District, supra.*) In either event, in determining whether the ordinance is reasonable or not, the court must take into consideration the object to be accomplished, the means for its accomplishment, and all existing conditions and circumstances. *Troy v. Village of Forest Park*, 318 Ill. 340, 149 N.E. 281.

■■ The reasonableness of an ordinance is a question of law to be decided by the court. (*City of Chicago v. Clark*, 359 Ill. 374, 194 N.E. 537.) However enactments of a municipal corporation are clothed with presumptive validity and one who challenges the validity of an ordinance must prove by clear and affirmative evidence that the ordinance constitutes arbitrary, capricious and unreasonable municipal action; that there is no permissible interpretation which justifies its adoption; or that it will not promote the safety and general welfare of the people. (*First National Bank v. County of Lake*, 7 Ill.2d 213, 130 N.E.2d 267.) With these legal principles in mind and a proper regard for the heavy burden plaintiffs must meet, we now turn to plaintiffs' arguments.

Plaintiffs attack the reasonableness of the ordinance in a variety of ways. They argue that pay toilets are cleaner and more sanitary; that the city has not shown that pay toilets are harmful or that the instant ordinance will remedy any evil; that the classification of buildings in the

ordinance is unreasonable; that to prohibit coin locks but not key locks[1] is unreasonable; and that the total prohibition rather than regulation of coin locks is unreasonable. Since this is a case of first impression in Illinois and evidently has not been considered in any jurisdiction, each of plaintiffs' arguments will be considered separately.

At trial, plaintiffs presented voluminous testimony to establish that coin lock toilets were cleaner and more sanitary, better equipped, less prone to vandalism, a deterrent to crime, and safer. Apparently, plaintiffs assumed that more sanitary toilets was the object of the ordinance and therefore by a showing that coin locks were cleaner and more sanitary, the unreasonableness of the instant ordinance would be evident. However, neither at trial nor in this court, has the city suggested that more sanitary toilets was the object of the ordinance. Moreover, the ordinance itself does not state that that was the object of the legislation. To sustain their contention that better sanitation was the object of the ordinance, plaintiffs can only point to the fact that the instant ordinance is now part of a chapter in the municipal code entitled "Light, Ventilation and Sanitation." Plaintiffs overlook the fact that the cited chapter is just one part of a larger section devoted to "Buildings" in general. In any event, we reject plaintiffs' formalistic approach to legislative interpretation and instead look to the language of the ordinance itself.

■■ As stated earlier, the reasonableness of an ordinance is a question of law, not of fact. The function of a court, in a case such as this, is to ascertain from the words of the law itself whether constitutional restraints have been exceeded. (*Pacesetter Homes, Inc. v. Village of South Holland,* 18 Ill.2d 247, 163 N.E.2d 464.) Examining the language of the ordinance, it is evident that the city's objective was to provide increased access to toilets in buildings open to the public. The ordinance is clear and unambiguous. The effect and purpose of the ordinance is to eliminate a common obstacle to the prompt and efficient disposal of the waste products of human metabolism. There is not one word in the ordinance that can be construed as directed towards better sanitation. Rather, the entire thrust of the ordinance is directed at increased access to toilet facilities. Viewed in this light, with a proper regard for the language of the ordinance, the object of the ordinance is not to provide more sanitary toilets, but to provide increased access to those toilets.

Consequently, plaintiffs' evidence as to the sanitary condition of toilet facilities with coin locks becomes irrelevant. Such evidence does not in

---

[1] The ordinance does not effect toilet facilities regulated by a normal key lock mechanism. The city council did not prohibit all locks, just those requiring a coin. Consequently, toilets may still be locked, however, it is unlawful to charge any sum of money to open that lock.

any way aid the court in resolving questions concerning the reasonableness of the actual object of the ordinance, providing access. Apparently anticipating this result, plaintiffs argue that this court is limited to sustaining the ordinance on the grounds presented at trial. They argue that since the city did not present any evidence at trial as to access, this court is precluded from deciding that increased access was the intended object. First, it must be noted that the city did present evidence that other Chicago ordinances require a certain minimum number of toilets in all buildings depending on the type and size of the building (Chicago, Ill., Code (1974), chs. 48, 66.) It can be inferred that since toilets are required, access to those toilets is required, and consequently, there was sufficient evidence on which to decide that access was the intended object of the ordinance. Notwithstanding that evidence, the validity of an ordinance such as the one in question cannot be made to depend wholly upon facts found in the particular case. Since testimony and other evidence vary from case to case, such a rule would result in the absurdity of declaring a law constitutional one day and unconstitutional the next. (*Pacesetter Homes, Inc. v. Village of South Holland, supra.*) Otherwise, a valid ordinance may be stricken because proper evidence, though available, was not presented at trial. The right and authority of a municipality to enact proper legislation cannot depend on such a mutable base. This is especially true when the question involves ascertaining the purpose of an ordinance which is often a matter of discerning legislative intent. In such cases, the only reliable evidence is frequently the language of the ordinance. This court cannot ignore the obvious language of the instant ordinance. That language requires the inexorable conclusion that increased access was the intended object of the ordinance.

Having decided that access was the object of the ordinance, we must now decide whether that object was reasonable in light of existing circumstances and conditions. (*City of Chicago v. Clark, supra.*) The lower court found:

> "The City Council in enacting the ordinance had the right to consider the present day complexities of urban structural and business development—the growth of population, the increase in construction and operation of office buildings of unprecedented heights and multitudinous and variety of tenants seeking public patronage, the increase in the number and size of retail establishments, the vast increase of automobile traffic and the number and variety of automobile service stations."

It need only be added that the regulation of toilet facilities, in all its aspects, is obviously related to the public health and therefore, a proper subject for the city council. This being so, the council could have rea-

sonably concluded that toilet facilities, no matter how sanitary, do not promote the public health if they are not readily accessible to the public. The rapid growth of the city, as outlined above, could reasonably convince the council that the public could no longer tolerate the requirement of a coin to perform that function of the average citizen so necessary and unpredictable. Special provisions are necessary for the health, safety, and convenience of populous communities crowded within a narrow space. Large concentrations of people occupying a limited area have needs peculiar to themselves. (*Biffer v. City of Chicago*, 278 Ill. 562, 116 N.E. 182.) We cannot say that, as a matter of law, the city council unreasonably concluded that improved access to toilet facilities in buildings open to serve the public was needed.

■■ It must be remembered that there was a heavy burden on plaintiffs to show that the ordinance constituted arbitrary, capricious, and unreasonable municipal action; that there was no permissible interpretation which justified its adoption, or that it will not promote the general welfare of the public. (*City of Decatur v. Chasteen*, 19 Ill.2d 204, 166 N.E. 2d 29.) The most important of the police powers is that of caring for the safety and health of the community. It is the policy of the law to favor such legislation. (*Biffer v. City of Chicago, supra.*) The plaintiffs have failed to show that improving access to toilet facilities is in any way an arbitrary, capricious and unreasonable municipal action. The city council could reasonably have believed that improving access to toilet facilities was required for the public health. We will not interfere with that determination. See *Schuringa v. City of Chicago*, 30 Ill.2d 504, 198 N.E.2d 326.

■■ Plaintiffs have also argued that the city has not shown that pay toilets are harmful or that the ordinance will remedy any evil. The short answer to that argument is that the burden of proving the unreasonableness of an ordinance is on the party challenging it. (*Keig Stevens Baking Co. v. City of Savanna*, 380 Ill. 303, 44 N.E.2d 23.) In the instant case, there was never any reason for the city to present any evidence. All the evidence presented by plaintiffs related to the sanitary conditions of pay toilets. As is now clear, this in no way questioned the reasonableness of an ordinance directed at access. However, even without the presumption of validity it is obvious that the instant ordinance did in fact remedy an evil which was, by definition, coin locks. Toilet facilities, no matter how sanitary or safe, are useless if they are not readily available to the public generally. Coin locks were one of the obstacles to improved access to these facilities. The city council could therefore have justifiably concluded that coin locks were an evil to be abolished and that this ordinance would accomplish that objective.

Plaintiffs next argue that the classification of the buildings in the ordinance is unreasonable. By its terms, the ordinance applies to "any building that is open to accommodate or serve the public." However, the ordinance goes on to state: "As used herein 'building that is open to accommodate or serve the public' shall include the following." A list of some 27 buildings then follows. Plaintiffs note the familiar legal maxims that the enumeration of certain things implies the exclusion of all others unless such a construction is contrary to the clearly expressed legislative intent (*Patterson v. City of Peoria*, 386 Ill. 460, 54 N.E.2d 445), and that a penal statute must be strictly construed. (*People v. Eagle Food Center, Inc.*, 31 Ill.2d 535, 202 N.E.2d 473.) From these principles, plaintiffs suggest that the list of buildings must be considered exhaustive and that in this sense, "include" is a word of limitation. Consequently, plaintiffs contend that the ordinance applies to some buildings open to the public but not others. Plaintiffs conclude that this is an unreasonable classification and therefore, the ordinance is invalid.

■■ However, the rule that the expression of one thing is the exclusion of another is not a rule of law, but only of construction, and should only be applied when it appears to point to the legislative intent, and never to defeat the plainly indicated purpose of the lawmaking body. (*Swick v. Coleman*, 218 Ill. 33, 75 N.E. 807.) When a statute contains an enumeration of certain things to which an act applies and also a general term or expression concerning the application of the act, the general term may be given full effect if the context shows the enumeration was not intended to be exclusive. (*People ex rel. County of DuPage v. Smith*, 21 Ill.2d 572, 173 N.E.2d 485.) Similarly, penal statutes are not to be construed so strictly as to defeat the obvious intention of the legislature. (*City of Chicago v. Bethlehem Healing Temple Church*, 93 Ill.App.2d 303, 236 N.E.2d 357.) Strict construction of penal statutes is far from a rigid and unbending rule, rather it has become so modified and explained away as to mean little more than that penal statutes, like all others, are to be fairly construed according to the legislative intent as expressed in the enactment. *Zellers v. White*, 208 Ill. 518, 70 N.E. 669.

■■■■ With these later principles in mind, we turn to the language of the ordinance itself. The first paragraph of the ordinance uses broad, general language. It refers to any building open to accommodate or serve the public. The second paragraph includes a list of buildings certainly within that general language. However, that second paragraph does not express any indication to limit the general language. The word "include" by itself does not connote exclusivity. And while the few Illinois cases seem rather evenly split (compare *Bunge v. Kirchhoff*, 251 Ill.App. 119, and *Patteson v. City of Peoria, supra*, with *Illinois Central RR. Co. v.*

*Franklin County*, 387 Ill. 301, 56 N.E.2d 775), the weight of authority ordinarily interprets "include" as a term of enlargement. (*Fraser v. Robin Dee Day Camp* (1965), 44 N.J. 480, 210 A.2d 208; *Skillman v. Abruzzo* (1958), 352 Mich. 29, 88 N.W.2d 420; *Sims v. Moore* (1972), 288 Ala. 630, 264 So.2d 484; *Koenig v. Johnson* (1945), 71 Cal.App.2d 739, 163 P.2d 746; *St. Louis County v. State Highway Com.* (Mo. 1966), 409 S.W.2d 149; *North Carolina Turnpike Authority v. Pine Island, Inc.* (1965), 265 N.C. 109, 143 S.E.2d 319.) In this case, the city council obviously intended to increase access to toilet facilities in all buildings open to serve the public. The general language used indicates an intent to provide this access to as broad a section of the public as possible. As has been seen, the word "include" does not by itself necessarily limit the general language.

■■ There would be no logical reason to extend access to the buildings listed and not to other buildings such as churches, hospitals and professional service buildings. In fact, a strictly "exclusive" reading of the ordinance would exclude buildings such as the Chicago Civic Center. No legal principle requires such a narrow interpretation of the ordinance. Moreover, a classification that resulted in excluding some buildings that are open to serve the public would cast doubt on the ordinance's validity. However, courts have a duty to interpret a statute so as to promote its essential purpose and to avoid, if possible, any contruction that would raise doubts as to its validity. (*People ex rel. City of Salem v. McMackin*, 53 Ill.2d 347, 291 N.E.2d 807; *Baro v. Murphy*, 32 Ill.2d 453, 207 N.E.2d 593.) A statute enacted to meet a need of the people should be liberally construed in order that the true intent and meaning of the legislative body may be carried out. (*City of Chicago v. Bethlehem Healing Temple Church, supra.*) Considering the reason and necessity for the law, the evil to be remedied, and the object and purpose to be obtained (*People ex rel. Moss v. Pate*, 30 Ill.2d 271, 195 N.E.2d 641), we cannot conclude that the city council intended the list of buildings to be exclusive. Rather, the listed buildings open to the public are merely illustrative of the type of building the city council intended to be within the broad scope of the ordinance.

Having concluded that the ordinance is not of limited scope but rather applies to all buildings open to accommodate or serve the public, the classification is an eminently reasonable one. The council could have reasonably concluded that such buildings attract a large number of visitors and that especially in an urban area such as Chicago, the public health required access to toilet facilities under such circumstances. Such a classification will be sustained if it is reasonably adapted to secure the purpose for which the ordinance is intended and is not purely arbitrary.

(*Keig Stevens Baking Co. v. City of Savanna, supra.*) It can not be said there is no fair reason for the distinction drawn by the ordinance. Accordingly, the classification must be upheld.

■■ Plaintiffs next argue that the prohibition of coin locks, but not of key locks, was unreasonable. Their argument is that, if access was the purpose of the ordinance, the key locks prevent access as much as, if not more than, coin locks. However, the city council is not bound to extend its regulation to all cases which it might possibly reach. It may confine its restriction to those classes where the need is deemed to be the clearest. (*Thillens, Inc. v. Morey*, 11 Ill.2d 579, 144 N.E.2d 735.) While prohibition of key locks in addition to coin locks may have more certainly guaranteed improved access to toilet facilities, the ordinance is not invalid for failing to take this additional step. The measure of reasonableness is not what is best but what is fairly appropriate to the purpose under all circumstances. (*Keig Stevens Baking Co. v. City of Savanna, supra.*) The fact that the additional prohibition of key locks might have been wiser or better is of no legal consequence. The wisdom, necessity and expediency of police regulations are no concern of the courts, but are matters primarily for the legislative body of the municipality. (*Schuringa v. City of Chicago, supra.*) Therefore, plaintiffs' argument that the ordinance should have been more comprehensive is not well taken.

Moreover, every legislative act is discriminatory in the sense that it is inclusive as to some class and exclusive as to the remainder. To be invalid, the classification must be arbitrary, that is, there must be no reasonable basis for the differentiation. (*Village of Roxana v. Costanzo*, 41 Ill.2d 423, 243 N.E.2d 242.) However, here the city council could have reasonably concluded that when key locks are used, the key is easily and readily available; but when coin locks are used, the required coin is an absolute necessity. So viewed, the coin lock might thus pose a more severe obstacle to access. Although plaintiffs inform us that keys for the coin locks are made available to lessees of the coin locks, the council could reasonably conclude that the general public is unaware of this fact.[2] It is also not unreasonable to assume that the public would be less likely to ask for a key to a coin lock than for a key to a normally locked restroom. For although most people don't hesitate to ask for a key to a locked restroom, it would not be surprising for a citizen to endure un-

---

[2] Moreover, it is difficult to believe that keys are in fact made generally available to users of coin-regulated facilities. For if they were, the obvious purpose of such a lock, to produce income, would be defeated. If keys were made generally available, there would be no need for a coin lock, for a normal key lock would produce the only other possible result, control over the restroom, to an even greater degree.

needed discomfort rather than admit he does not have the required coin. Either premise would provide a valid basis for the distinction between coin and key locks. Where there is an honest conflict of serious opinion as to the wisdom or unwisdom of a municipal ordinance, the courts will not interfere with the legislative judgment. (*Chicago Allis Manufacturing Corp. v. Metropolitan Sanitary District, supra.*) We conclude that the city council could validly distinguish betwen key and coin locks and was under no obligation to include the former within the scope of the ordinance.

Plaintiffs' final argument is that a total prohibition of coin locks, rather than a mere regulation of coin locks was unreasonable. Plaintiffs apparently argue that the prohibition of a business is permissible only upon some special showing that the business is in fact harmful to the public. Plaintiffs rely primarily on *Pacesetter Homes, Inc. v. Village of South Holland, supra.* In that case, the court was faced with a Sunday closing ordinance that prohibited, with certain limited exceptions, all business activity. The court determined that the prohibition of motel or gas station operations and the showing of model homes had no reasonable relation to the legitimate purpose of Sunday laws, that is, to enable others to worship free from disturbance, and therefore the ordinance was invalid. Plaintiffs emphasize one statement by the court that "[t]he legislature can not prohibit that which is harmless in itself." (18 Ill.2d 247, 254.) However, plaintiffs overlook the fact that the court's statement was peculiarly appropriate to those facts. South Holland had prohibited virtually all Sunday activity, no matter how quietly or unobtrusively it could be carried on. Plaintiffs in *Pacesetter* were indiscriminately included in a sweeping ordinance that prohibited activity both related and unrelated to the purpose of the ordinance. *Pacesetter* did not turn on the fact that there was total prohibition of an activity, but rather that the ordinance was not reasonably related to its purpose. In the case at bar, it has already been determined that the instant ordinance is a reasonable exercise of the city's power. The mere fact that it involves total prohibition does not change that result. Since the instant plaintiffs can make no showing that the present ordinance includes activity unrelated to its obvious purpose, their reliance on *Pacesetter* is misplaced.

■■ In fact, Illinois cases have not held that total prohibition renders an ordinance unreasonable *per se*. Nor have the Illinois courts required any special showing of harm to sustain prohibitory ordinances. Once an ordinance is found to reasonably relate to the public health, safety or general welfare, the fact that it prohibits rather than regulates is of no importance. In *Raymond v. Village of River Forest*, 350 Ill.App. 80, 111 N.E.2d 848, an ordinance prohibiting the use of juke boxes was sustained with no extended discussion of that instrumentality's special harm to the

public. In *Village of Atwood v. Otter,* 296 Ill. 70, 129 N.E. 573, billiard playing was similarly totally prohibited. Automatic vending machines for the sale of cigarettes were totally prohibited in *Illinois Cigarette Service Co. v. City of Chicago* (7th Cir. 1937), 89 F.2d 610. In that case, the mere possibility that minors may use the machines was deemed sufficient to sustain the ordinance. In *City of West Frankfort v. Fullop,* 6 Ill.2d 609, 129 N.E.2d 682, the court noted that the power to protect public health can include the power to prohibit boating, fishing, and seaplane operations. That court went on to suggest that oil well drilling might be absolutely prohibited near the public water supply even though the defendants had previously possessed valid drilling leases. Finally, in *Good Humor Corp. v. Village of Mundelein,* 33 Ill.2d 252, 211 N.E.2d 269, the court permitted absolute prohibition of peddling on the village streets. In view of these cases, the fact that the instant ordinance prohibits coin locks rather than regulates them is not determinative. Moreover, none of the cases suggest a requirement of any special showing of harm.

■■ We emphasize again that a municipal ordinance is presumptively valid and that there is a heavy burden on plaintiffs to show that the ordinance constitutes arbitrary, capricious and unreasonable municipal action. We cannot say that this burden has been met nor that this ordinance will not promote the health and general welfare of the people. Accordingly, that portion of the circuit court's order declaring the ordinance constitutional is affirmed.

We now turn to the city's cross-appeal. The lower court found that the ordinance would result in confiscation of the property of NIK-O-Loc and Universal without due process of law. These plaintiffs would allegedly suffer the loss of their investment and the impairment of their contractual rights. Based upon a finding that these plaintiffs would suffer a loss separate and distinct from the burden imposed on the public generally, the court concluded that compensation would be due and reserved jurisdiction to later determine the exact amount. The city argues that a rightful exercise of the police power is not a violation of the fourteenth amendment even though private property rights may be affected and consequently, compensation is not required.

■■ The law is quite clear that when property is affected pursuant to valid legislation concerning the police power (here the public health), no compensation is required. (*Department of Public Works and Buildings v. Bills;* 66 Ill.App.2d 170, 213 N.E.2d 110.) In such cases, if there is in fact any loss, the law considers it either *damnum absque injuria* or sufficiently compensated for by sharing in the general benefits resulting from the exercise of the police power. (*Belmar Drive-In Theatre Co. v. Illinois State Toll Highway Commission,* 34 Ill.2d 544, 216 N.E.2d 788.)

As the court in *Sherman-Reynolds Inc. v. Mahin,* 47 Ill.2d 323, 328, 265 N.E.2d 640, 643, stated:

"Regulations imposed by a State in the exercise of its police power, when reasonable and adapted to the scope and objects sought to be accomplished, are not rendered unconstitutional even though private property may be injured, interfered with, or damaged without the payment of compensation. The constitutional rights obtaining to private property are subordinate to the police power, [citations] and if legislation is within the police power, then the rights of the individual which may be affected thereby must give way to the superior rights of the public, and he cannot complain that his property is taken without due process of law or without compensation first paid to him. [Citations.]"

It is against these legal principles that plaintiffs' right to compensation must be tested.

This is not a situation where plaintiffs' property has been totally destroyed or rendered useless for all reasonable purposes. In those situations some courts have found a constructive taking even though the forbidden use has not been transferred to the government so as to be a taking in the traditional sense. (See *Just v. Marinette County* (1972), 56 Wis.2d 7, 201 N.W.2d 761, 767.) However, no such taking is presented in the instant case. Rather, this case is more closely analogous to the facts in *Illinois Cigarette Service Co. v. City of Chicago, supra.* There, cigarette vending machines had been totally prohibited in Chicago. In response to a claim that the ordinance was confiscatory, the court stated:

"[Plaintiffs] may remove them, transport them, lease them elsewhere, or utilize them in any manner in the City of Chicago not in conflict with the ordinance or make any such adaptation to other proper purposes as may be necessary." 89 F.2d 610, 613.

Plaintiffs in the instant case may likewise make the same use of their coin locks.

■■ There can be no doubt that the property of the plaintiffs is adversely affected by the ordinance. However, the fact that the ordinance imposes certain burdens, or prevents the most profitable use of the property in private hands, does not of itself render the legislation invalid or necessarily result in a taking of property without just compensation. (*Petterson v. City of Naperville, supra.*) The privilege of every citizen to use his property according to his own will is both a liberty and a property right, but these rights are always subordinate to the interests of the public welfare. There is no constitutional guarantee that an individual may carry on his business in a certain way when the public welfare requires regulations. *City of Decatur v. Chasteen, supra.*

We are not unmindful of the warning of Justice Holmes in *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 416, 67 L.Ed. 322, 326, 43 S.Ct. 158:

"We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change."

However the distinction between acts that are within the police power and those within just compensation requirements is largely a matter of degree and must be based on the particular facts presented. *Art Neon Co. v. City & County of Denver* (10th Cir. 1973), 488 F.2d 118.

We have earlier concluded that the present ordinance was a valid and reasonable exercise of the city's police power. Since the prohibition of the coin locks is pursuant to this valid exercise of the police power, compensation is not required. There has been no showing of a taking of plaintiffs' property to such a degree that would remove the instant facts from the general rule. Accordingly, that portion of the circuit court's order awarding compensation is reversed.

That portion of the circuit court's order declaring the ordinance constitutional is affirmed. That portion of the order finding plaintiffs Nik-O-Loc and Universal entitled to compensation is reversed.

Judgment affirmed in part; judgment reversed in part.

HAYES, P. J., and LEIGHTON, J., concur.