In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 15-1885, 15-1887

KELLY SONNENBERG, *et al.*,

*Plaintiffs-Appellants,*

*v.*

AMAYA GROUP HOLDINGS (IOM) LIMITED, formerly known as
Oldford Group, Ltd., *et al.*,

*Defendants-Appellees.*

_____

JUDY FARHNER, *et al.*,

*Plaintiffs-Appellants,*

*v.*

TILTWARE, LLC, *et al.*,

*Defendants-Appellees.*

_____

Appeals from the United States District Court for the
Southern District of Illinois, Nos. 3:13-cv-00227-DRH-SCW,
3:13-cv-00344-DRH-SCW — **David R. Herndon**, *Judge.*

_____

ARGUED NOVEMBER 2, 2015— DECIDED JANUARY 15, 2016

_____

Before BAUER, POSNER, and KANNE, *Circuit Judges*.

POSNER, *Circuit Judge*. The four plaintiffs have filed between them two diversity suits, governed by the substantive law of Illinois, against a variety of persons and companies that host Internet gambling websites. They contend that the defendants owe them the money that two of the plaintiffs (Casey Sonnenberg and Daniel Fahrner) lost in gambling on the defendants' websites. The district court granted the defendants' motions to dismiss, precipitating these two appeals. Although both suits are in federal court under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), the district judge had not yet decided whether to certify the classes when he dismissed the complaints, and no class-action issue is presented by the appeals.

An Illinois statute imposes criminal penalties on anyone who "knowingly establishes, maintains, or operates an Internet site that permits a person to play a game of chance or skill for money or other thing of value by means of the Internet or to make a wager upon the result of any [such] game." 720 ILCS 5/28-1(a)(12). It also punishes "any person who knowingly permits any premises or property owned or occupied by him or under his control to be used as a gambling place." § 5/28-3. Another section, called the Illinois Loss Recovery Act, provides that "any person who by gambling shall lose to any other person, any sum of money or thing of value, amounting to the sum of $50 or more and shall pay or deliver the same or any part thereof, may sue for and recover the money or other thing of value, so lost and paid or delivered, in a civil action against the winner thereof." § 5/28-8(a). The statute dates from an era of strong opposition in Illinois to gambling. See, e.g., *Zellers v. White*, 70

N.E. 669, 672 (Ill. 1904). That era has ended, and the laws are gradually being relaxed. See, e.g., 720 ILCS 5/28-1(b) (listing exceptions to the prohibition on gambling); Illinois Riverboat Gambling Act, 230 ILCS 10/1 *et seq.*; Illinois Video Gaming Act, 230 ILCS 40/1 *et seq.*; cf. GAMBLEONLINE.CO, "Illinois Online Gambling," www.gambleonline.co/usa/illinois/ (visited January 15, 2016*)*.

Casey Sonnenberg and Daniel Fahrner claim that each lost $50 or more at Internet gambling sites operated by one or more of the defendants. But if a person entitled by § 5/28-8(a) to sue the winner has not done so within six months of losing, then by virtue of another section of the Loss Recovery Act "*any* person may initiate a civil action against the winner" to recover "triple the amount" of the gambler's loss. § 5/28-8(b) (emphasis added). Though neither Kelly Sonnenberg nor Judy Fahrner, the other two plaintiffs (who happen to be the mothers of Casey and Daniel), lost money—indeed neither gambled at any of the defendants' sites—they seek to recover triple their sons' losses under the "any person [may sue the winner]" provision. The sons cannot sue because they admit in their complaints that they failed to sue within six months of the losses that they sustained in gambling on the defendants' websites. They claim to have maintained accounts on the websites until 2011, the year the federal government shut down the sites (in April). But their lawsuits were not filed until July and August 2012—too late. See *Bartlett v. Slusher*, 74 N.E. 370, 372 (Ill. 1905); *Kizer v. Walden*, 65 N.E. 116, 117–18 (Ill. 1902); *Holland v. Swain*, 94 Ill. 154, 157 (1879).

The mothers' claims are timely. Their problem (which would equally beset their sons' suits, were those suits not

time-barred) is that the defendants are not the winners of any game that any of the plaintiffs (or their sons) played. The defendants are the gambling sites, not the persons who won from Daniel and Casey in a game hosted by the site (and the mothers didn't even gamble at any of the sites). A winner would be a person whom a player had played with and lost to. *Ranney v. Flinn*, 60 Ill. App. 104, 104 (1894); cf. *Pearce v. Foote*, 113 Ill. 228, 238 (1885); *Reuter v. MasterCard Int'l, Inc.*, 921 N.E.2d 1205, 1214–16 (Ill. App. 2010). It's true that the sites rake off some of the money in the pot, and it is this that causes the plaintiffs to call the sites "winners." But charging a fee for engaging in gambling is not the same as winning a gamble; a croupier who supervises a casino's poker game is not a gambler, let alone a winner. With some exceptions, such as playing blackjack or slot machines, the player in a casino (or its online equivalent) places the money he is betting in a (figurative) pot. The host takes a share of the pot to defray the expense of maintaining the gambling site but has no stake in the outcome of the games played on the site.

Faced with this barrier to their claims under the Loss Recovery Act, the plaintiffs ask us to read a civil cause of action into the criminal provisions aimed at the owners and operators of illegal sites—a civil cause that would entitle the plaintiffs to damages measured by their losses. 720 ILCS 5/28-1, 5/28-3. This might seem a reasonable supplement to a mere misdemeanor punishment. But among other objections to the suggestion, only the first violation is a misdemeanor; a second, third, etc. is a felony, §§ 5/28-1(c), 5/28-3, and so a private right of action is not necessary to assure a reasonable degree of compliance with the statute. See *Metzger v. DaRosa*, 805 N.E.2d 1165, 1171 (Ill. 2004). Such a remedy would not

be entirely superfluous, however. Even though the only loss of which the plaintiffs complain is a gambling loss that they could have recovered by suing the winner, a gambler would be reluctant to sue the winner if it were a friendly game. And hordes of new gamblers might be enticed to gambling websites if gamblers couldn't lose any money there because the hosts of the websites would have to reimburse any losses they incurred. (In other words, heads I (the gambler) win, tails you (the host) lose.) The threat of having to reimburse all these eager gamblers-turned-plaintiffs could drive the gambling hosts out of business. But fortunately for the hosts, Illinois courts are reluctant to imply a private right of action in one section of a statute if other sections expressly create such rights. See, e.g., *id*. at 1172. There is no reason to depart from that approach in a case like this one where the statute already provides adequate enforcement mechanisms.

The plaintiffs also invoke § 5/28-7, which declares gambling contracts null and void. But the plaintiffs have no contract with the defendants that they ask the court to void.

Creating legal remedies for gambling losses as a way to discourage gambling seems a lost cause, since the usual gambling "loss" is not a real loss and hence is not a real spur to litigation unless the game is rigged. A gambler knows that the money he puts in the pot is at risk. It is not a risk he *has* to take; he takes it because he hopes to win the pot, or simply because he likes gambling or risk taking in general. If he loses $50 he may well say to himself "I'd rather have won, but $50 wasn't too high a price to pay for a night of gambling, and en route to losing $50 I did after all win some nice pots and get compliments from the guys I was playing with."

The judgment dismissing the suits is

AFFIRMED.